```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MACLOVIA TURCIOS

                    Plaintiff,
                                                MEMORANDUM & ORDER
          -against-                             18-CV-1177 (JS)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Howard D. Olinsky, Esq.
                    Olinsky Law Group
                    250 South Clinton Street, Suite 210
                    Syracuse, New York 13202

For Defendant:      Matthew Mailloux, Esq.
                    Megan Jeanette Freismuth, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
```

SEYBERT, District Judge:

Plaintiff Maclovia Turcios ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of her application for Social Security Disability Insurance Benefits. (Compl., ECF No. 1, ¶¶ 1-2.) Presently pending before the Court are the parties' cross-motions for judgment on the pleadings. (Pl. Mot., ECF No. 13; Comm'r Mot., ECF No. 18.) For the following reasons, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

BACKGROUND[1]

I.   Procedural History

On February 11, 2014, Plaintiff completed an application for disability insurance benefits alleging disability as of May 16, 2013 due to impairments to her neck, back, right shoulder and left foot. (R 60, 70.) After Plaintiff's claim was denied (R. 69), she requested a hearing before an Administrative Law Judge ("ALJ") (R. 93-99). On May 10, 2016, Plaintiff, accompanied by a representative, appeared for a hearing before ALJ Patrick Kilgannon. (R. 31-59.) Evelyn Clark, a vocational expert, also testified at the hearing. (R. 41-43, 51-58.)

In a decision dated August 31, 2016, the ALJ found that Plaintiff was not disabled. (R. 13-24.) On December 21, 2017, the Social Security Administration's Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1-9.)

Plaintiff initiated this action on February 23, 2018 (see Compl.) and moved for judgment on the pleadings on April 12, 2019 (Pl. Mot.). On June 11, 2019, the Commissioner filed a cross-motion for judgment on the pleadings (Comm'r Mot.), and Plaintiff

---

[1] The background is derived from the administrative record filed by the Commissioner on February 9, 2018. (R., ECF No. 21.) "R." denotes the administrative record. For purposes of this Memorandum and Order, familiarity with the administrative record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

opposed the Commissioner's motion on July 2, 2019 (Pl. Opp., ECF No. 20). The matter was reassigned to the undersigned from the Honorable Arthur D. Spatt on July 1, 2020.

## II. Evidence Presented to the ALJ

The Court first summarizes Plaintiff's testimonial evidence and employment history before turning to Plaintiff's medical records and the Vocational Expert's testimony.

### A. Testimonial Evidence and Employment History

At the time of the May 10, 2016 hearing, Plaintiff was fifty-one years old with limited education and English-language skills. (R. 35-36.) She testified that she lives with her husband and three children, who were in their thirties at that time. (R. 47.) Plaintiff had been working at a clothing boutique as a cleaner and clothing organizer when she fell and injured her right shoulder, neck, and left leg. (R. 37-38, 43-44.) Before that, Plaintiff operated machinery in a factory. (R. 38-39, 222.)

Plaintiff testified that after her injury she presented to the hospital before receiving treatment from an orthopedic surgeon. (R. 44.) Plaintiff testified that her course of treatment included "[i]njections, hot patches, exercise, [and an] MRI," and that while it "helped a little . . . the pain returned." (R. 46.) Plaintiff testified further that shoulder surgery did not resolve the pain; rather, "[w]hat really helped me is the medication that they gave me." (R. 46, 50.) Using a scale of one

to ten, Plaintiff described the pain in her right shoulder as an "eight," the pain in her left ankle as a "six," and the pain in her left foot as "about a seven." (R. 46.) She also testified that when she wakes up in the morning her "hands become numb" and her "fingers become very tense," especially when it is cold. (R. 46-47.) Plaintiff testified that most of the time her family handles household chores like cooking and folding laundry, but if no one is around she will do "simple things" like cooking eggs. (R. 47-49.)

    B.    <u>Medical Evidence</u>

Plaintiff began to seek treatment for pain in her right shoulder and left foot in 2013 after the work-related accident. (R. 20, 205.) Plaintiff presented to Dr. David Khanan, M.D., a physiatrist, on May 9, 2013 for an evaluation. (R. 279-82.) Dr. Khanan's physical examination findings included tenderness of the right shoulder, tenderness to palpation of the right trapezius muscle, moderately limited range of motion, positive Codman's test, positive supraspinatus stress test, moderate tenderness and swelling about the left ankle and foot, and decreased motor strength in the right shoulder and left ankle. (R. 280.) Dr. Khanan prescribed physical therapy and pain medication (Motrin 600mg) and ordered trigger point injections for Plaintiff's right trapezius muscle for pain control, which she received shortly thereafter. (R. 281-82, 299-303.)

On July 1, 2013, Plaintiff underwent an MRI of her right shoulder that revealed "trace joint effusion" and findings "consistent with tendonitis of the supraspinatus tendon." (R. 316.) On August 29, 2013, Plaintiff underwent an MRI of the cervical spine. (R. 244.) A later electrodiagnostic study showed findings consistent with C5 radiculopathy, but "the longitudinal record reflects rather conservative treatment for [Plaintiff's] cervical conditions, with the bulk of her medical treatment focusing primarily on her right shoulder issues." (R. 21.)

On March 20, 2014, Plaintiff presented to Dr. Brett Spain, D.O., who identified posterior neck pain with left lateral rotation and a positive Spurling maneuver that caused pain into the left upper extremity. (R. 353.) Dr. Spain also examined Plaintiff's right shoulder and found anterior shoulder tenderness, decreased supraspinatus strength and pain with manual resistance, and positive Hawkin's and Neer's tests. (R. 353.) Plaintiff exhibited normal gait, normal reflexes and sensation of the upper extremities bilaterally, and 5/5 grips strength and biceps, triceps, wrist strength bilaterally. (R. 353.)

On March 26, 2014, Plaintiff presented to Dr. Charles Ruotolo, M.D., an orthopedic surgeon, for examination of her right shoulder. (R. 355.) Dr. Ruotolo's findings were substantially similar to Dr. Spain's, including severe anterior right shoulder tenderness and positive Hawkin's and Neer's tests. (R. 356.)

Plaintiff's reflexes, sensation, and strength were otherwise normal. (R. 356.) Dr. Ruotolo recommended a right shoulder arthroscopy because Plaintiff "failed 9 months physical therapy and multiple steroid injections." (R. 356.) In July 2015, Dr. Ruotolo performed a right shoulder arthroscopy procedure on Plaintiff that included debridement of a partial thickness rotator cuff tear, subacromial decompression, and a partial synovectomy. (R. 638.)

Plaintiff visited Dr. Ruotolo on October 7, 2015. (R. 623.) A physical examination revealed, among other things, mild right shoulder tenderness, decreased range of motion, and normal reflexes and sensation with improved external rotator strength. (R. 624.) Dr. Ruotolo also noted that Plaintiff's "pain is decreased" from prior, pre-surgery visits, although she reported experiencing "significant pain at night." (R. 623-24; see also R. 582, 584.) At a follow-up examination on May 4, 2016, Dr. Ruotolo noted substantially similar findings and observed that Plaintiff had reached maximum medical improvement. (R. 635-37.)

    C.    Opinion Evidence

Plaintiff presented to Dr. Jerome Caiti, M.D., on April 22, 2014 for an orthopedic examination. Dr. Caiti assessed Plaintiff had minimal to mild limitation because of lower back pain but was unable to assess Plaintiff's ability to reach, push, pull and lift with her right arm because she declined to attempt

range of motion of her right shoulder and cervical spine. (R. 487.) Dr. Caiti further assessed that Plaintiff's left arm was unrestricted and that she did not have any limitations with sitting, standing, walking or climbing. (R. 488.)

On June 8, 2016, Plaintiff presented to Dr. Louis Fuchs, M.D., an orthopedist specialist, who opined that Plaintiff could stand and walk for three hours each during an eight-hour workday. (R. 1736.) Dr. Fuchs further assessed that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, and also had some manipulative and postural limitations, such as no climbing, ladders or scaffolds, and only occasionally climbing stairs and ramps, balancing, stooping, kneeling, crouching and crawling. (R. 1737-38.) In a questionnaire completed in April 2014, however, Dr. Ruotolo opined that Plaintiff had significant functional limitations, including being able to stand or walk for four hours during an eight-hour workday and only occasionally lift and carry up to five pounds, with marked limitation in using her right arm for gross manipulation and reaching. (R. 470-76.) Similarly, in April 2014 Dr. Spain opined significant functional restrictions, including that Plaintiff could sit for four hours and stand or walk for two hours during an eight-hour workday. (R. 478-86.)

D.   Vocational Expert's ("VE") Testimony

At the hearing, the VE testified that Plaintiff had worked as a commercial cleaner, Dictionary of Occupational Titles ("DOT") no. 381.687-014; cutter, machine II, DOT no. 699.685-014; small parts assembler, DOT no. 739.687-031; and maid, DOT no. 323.687-014.  The VE further testified that the cutter and small parts assembler jobs are classified in the DOT as light work that require no climbing, balancing, stooping, kneeling, crouching, and crawling.  (R. 42-43.)  When asked to consider a hypothetical individual with Plaintiff's vocational profile and residual functional capacity, discussed infra, the VE testified that such an individual would be able to perform Plaintiff's past relevant work as a cutter, cleaner, and hotel maid, as generally performed.  (R. 52-54.)  In addition, the VE concluded that Plaintiff would be able to perform the cutter job even if she was not able to reach overhead with her right arm.  (R. 54.)

## DISCUSSION

I.   Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether the plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).  If the Court finds that substantial evidence exists to support the

Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

II. The ALJ's Decision

A. The Five-Step Disability Analysis

Initially, the ALJ found that Plaintiff meets the insured-status requirements of her claim through June 30, 2016. (R. 18.) Next, the ALJ applied the familiar five-step disability analysis and concluded that Plaintiff was not disabled from May 16, 2013, the alleged disability-onset date, through June 30, 2016, the date of the decision. (R. 18-24); see 20 C.F.R. § 404.1520. At steps one through three, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date (R. 18); (2) Plaintiff had severe impairments consisting of right shoulder rotator cuff tear and impingement syndrome status post rotator cuff repair, chronic cervical myofascitis, and lumbar degenerative disc disease (R. 18-19); and (3) Plaintiff's impairments did not meet or medically equal the severity of any of the impairments listed in Appendix 1 of the Social Security regulations (R. 19).

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work," with certain limitations, described infra. (R. 19.) Proceeding to step four, the ALJ found that Plaintiff was able to perform past relevant

work as a machine cutter II, based on the testimony of the VE. (R 24.) Accordingly, the ALJ determined that Plaintiff is not disabled. (R 24.)

B. The ALJ's RFC Determination

The ALJ determined that Plaintiff has the RFC "to perform light work," except that:

> she could lift and carry up to 20 pounds occasionally and ten pounds frequently; could sit for six hours and stand or walk for six hours during the course of an eight-hour workday, with normal breaks; is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; has no manipulative limitations with the left upper extremity; and with respect to the right upper extremity, was limited to frequent reaching, handling, fingering, and feeling, but with only occasional overhead reaching.

(R. 19.) The ALJ first concluded that although Plaintiff's medical impairments could reasonably be expected to produce her symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." (R. 20.) The ALJ proceeded to summarize Plaintiff's medical history and medical opinion evidence from David Khanan, M.D., a physiatrist; Brett Spain, D.O.; Charles Ruotolo, M.D., an orthopedic surgeon (together with Dr. Khanan and Dr. Spain, the "Treating Physicians"); Louis Fuchs, M.D., an orthopedist specialist; and Jerome Caita, M.D., a consultative examiner.

First, the ALJ assigned "some weight" to the opinion of Dr. Fuchs, and "great weight" to the extent it is consistent with the RFC, because Dr. Fuchs' opinion is "generally consistent with the overall record in recognizing that [Plaintiff] has meaningful exertional limitations, but certainly remains capable of a reduced range of light level activity." (R. 22.) The ALJ assigned "little weight" to the opinion of Dr. Caiti, however, because it "does not adequately reflect the full extent of [Plaintiff's] functional deficits as established by the overall record." (R. 22.) Nevertheless, the ALJ noted that Dr. Caiti's opinion is "fairly consistent with the substantial evidence of record" insofar as it suggests that Plaintiff "does not have any profound limitations with ambulation or light level lifting and carrying that would prevent work activity" according to Plaintiff's RFC. (R. 22.)

The ALJ next gave "some weight" to each of the Treating Physicians, to the extent consistent with the ALJ's findings. Although the ALJ found that the Treating Physicians' opinions were "somewhat consistent with the objective medical evidence in recognizing [Plaintiff] would have meaningful difficulties with activities involving a significant amount of lifting and carrying," the ALJ noted that the opinions were over two years old and indicated a significantly higher degree of restriction than supported by the substantial medical evidence, such as moderate clinical findings, Plaintiff's use of only mild pain medications

for her symptoms, and her reports of functioning. (R. 23.) Moreover, the ALJ concluded that the Treating Physicians' assessments of Plaintiff's disabilities in terms of percentages (e.g., "100% temporary impairment") were conclusory because they did not include a "function-by-function assessment of the Plaintiff's abilities to perform specific work-related activities." (R. 23.) Last, the ALJ reasoned that Plaintiff's "mostly routine and conservative management of [her] musculoskeletal symptoms," as well as her own reported activities, demonstrate the Plaintiff is not limited beyond her RFC. (R. 23.)

III. Analysis

Plaintiff advances two primary arguments: (1) the ALJ's RFC determination is not supported by substantial medical evidence because he failed to incorporate portions of Dr. Fuchs' opined limitations into the RFC determination even after crediting Dr. Fuchs' opinion (Pl. Br., ECF No. 14, 10-14); and (2) the ALJ failed to follow the treating physician rule and appropriately weigh the opinions of Plaintiff's Treating Physicians (id. at 14-17). The Commissioner contends that Plaintiff misrepresents the ALJ's analysis of the Dr. Fuchs assessment and that the ALJ properly considered Dr. Fuchs' report in the context of the overall record, reasonably concluding that it was not fully supported by the record. (Comm'r Br., ECF No. 19, 20-24.) In addition, the Commissioner responds that the ALJ properly assessed and weighed

the Treating Physicians' opinions. (Id. at 16-20.) Last, the Commissioner contends that Plaintiff "loses sight of the fact that the ALJ properly considered the totality of the record in assessing Plaintiff's RFC." (Id. at 24.) The Court addresses these arguments in turn.

Plaintiff is correct that it is legal error for the ALJ to disregard, without explanation, portions of a medical opinion that favor a finding of disability where it accorded great weight to that opinion, see Dioguardi v. Comm'r Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006), but this argument fails here for several reasons. First, the ALJ did not give "great weight" to Dr. Fuchs' opinion, contrary to Plaintiff's assertion. Rather, while the ALJ gave great weight to the opinion to the extent it was consistent with exertional demands of light duty work, it found that the opinion was only entitled to "some weight" when considered alongside Plaintiff's entire medical record, which demonstrated that Plaintiff was not as limited as Dr. Fuchs suggested. (R. 22.) In any event, the ALJ's RFC determination need not "perfectly correspond" with any of the medical opinions cited in the RFC determination, so long as the ALJ weighs all of the evidence to arrive at a RFC that is consistent with the whole record. Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (summary order). The ALJ did so here, situating Dr. Fuchs' opinion in the context of the overall record. In doing so, the ALJ concluded that

Plaintiff's ability to walk and stand was not as limited as Dr. Fuchs suggested, reasoning, for example, that the substantial medical records indicate that Plaintiff "does not have any profound limitations with ambulation" and that "the bulk of her medical treatment focus[ed] primarily on her right shoulder issues." (R. 21-22.)  Thus, this case is unlike Dioguardi, where the ALJ failed to explain why it adopted only the less favorable portions of three medical source opinions, two of which it purported to give "very great weight."  445 F. Supp. 2d at 297-98.  Here, the ALJ properly considered Dr. Fuchs' opinion in the context of the whole record and explained why certain portions of that opinion were not credited.  Accordingly, the Court is not faced with "different but equally weighted opinions from two physicians" and no explanation as to why "the ALJ chose to disregard the evidence that was more favorable to plaintiff's claim."  Id. at 298.

Next, Plaintiff argues that the ALJ failed to correctly apply the treating physician rule.  The Court applies the treating physician rule because Plaintiff filed her claim before March 27, 2017.  See 20 C.F.R. § 404.1527.  The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).  The regulations state:

> Generally, we give more weight to medical opinions from your treating sources . . . . If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (second and third alterations in original). Thus, the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record." Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citation omitted). When an ALJ does not afford controlling weight to the opinion of a treating physician, the ALJ must consider several factors: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good reasons' for not crediting the opinion of a [plaintiff's] treating physician." Id. at 287. An ALJ provides "'good reasons' for discounting a treating physician's opinion that reflect in substance the factors as set forth in [Section] 404.1527(d)(2),

even though the ALJ declines to examine the factors with explicit reference to the regulation." Crowell v. Comm'r of Soc. Sec., 705 F. App'x 34, 35 (2d Cir. 2017) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence."). "Ultimately, an ALJ must comprehensively set forth her reasons for the weight assigned to a treating physician's opinion." Id. (internal quotation marks and citation omitted).

In the present case, the ALJ properly weighed the Treating Physicians' opinions. Indeed, the ALJ gave some weight to these opinions consistent with the aforementioned factors. For example, the ALJ acknowledged that Dr. Khanan, Dr. Ruotolo, and Dr. Spain were treating sources during the relevant period (R. 23) and recognized that Dr. Spain and Dr. Ruotolo were orthopedic specialists (R. 21). Moreover, the ALJ found that the Treating Physicians' opinions were "somewhat consistent" with the overall record, insofar as they recognized that Plaintiff would have meaningful difficulties with activities involving a significant amount of lifting and carrying. (R. 23.) But because the Treating Physicians' opinions were not consistent with the medical record as a whole, the ALJ concluded that they were not entitled to controlling weight. (R. 23.)

Specifically, the ALJ found that the Treating Physicians' opinions favoring a finding of disability were more than two years old and inconsistent with both their own notes and other contemporaneous evidence in the record. The Treating Physicians' opinions were provided in early 2014, before Plaintiff underwent surgery that the record indicates improved her conditions. (Compare R. 541 (pre-surgery treatment notes from Dr. Ruotolo), with R. 623 (post-surgery treatment notes from Dr. Ruotolo observing decreased pain).) Plaintiff does not dispute that there is medical evidence showing that Plaintiff's condition improved after surgery, thus supporting the ALJ's decision not to afford the pre-surgery Treating Physicians' opinions as controlling. Rather, Plaintiff contends "Defendant's ability to find a treatment note that shows improvement does not make a treating physician's opinion inconsistent." (Pl. Opp. at 4 (citing Richardson v. Astrue, No. 09-CV-1841, 2009 WL 4793994, at *9 (S.D.N.Y. Dec. 14, 2009)).) While true, evidence of improvement after surgery is not the only inconsistency identified by the ALJ. The ALJ also pointed to the April 2014 opinions from Dr. Ruotolo and Dr. Spain. (R. 22-23.) While both treating physicians opined that Plaintiff had significant functional restrictions, Dr. Ruotolo found that Plaintiff could sit for eight hours and stand or walk for up to four hours in an eight-hour workday, while Dr. Spain opined that Plaintiff could sit for up to four hours and

stand or walk for up to two hours in an eight-hour workday. (R. 22-23.) Moreover, the ALJ concluded that the Treating Physicians' opinions "reflect[ed] a significantly higher degree of restriction than is suggested by the substantial medical record," including their own "moderate clinical findings," such as Dr. Khanan's observation that Plaintiff could return to work so long as she did not lift or carry more than ten pounds and Dr. Ruotolo's and Dr. Spain's findings that Plaintiff exhibited a normal gait and lack of diagnoses as to her legs, feet or ankles, thus undermining their opinions of significant limitations sitting, standing and walking. (R. 21-23.) Indeed, as the ALJ observed, the Treating Physicians' opinions could not be squared with Plaintiff's reports of functioning to Dr. Caiti and during her hearing. (R. 23.) In light of these inconsistencies, the ALJ had good reason to discount the Treating Physicians' opinions. Heil v. Comm'r of Soc. Sec., No. 16-CV-6653, 2017 WL 5467714, at *5 (W.D.N.Y. Nov. 14, 2017) (finding the ALJ provided "good reasons" for discounting a treating physician's opinions where the opinions were generally inconsistent with the objective findings in the record and with the physician's own physical examinations).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion (ECF No. 13) is DENIED as stated herein and the Commissioner's motion (ECF No. 18) is GRANTED.

The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED.

_/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   January  11 , 2021
         Central Islip, New York